UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X

JOSEPH SCHIAVONE,

                        Plaintiff,                        **DECISION AND ORDER**

        -against-                           25 Civ. 3345 (AEK)

TOWN OF ORANGETOWN,

                        Defendant.
---------------------------------------------------------------X

**THE HONORABLE ANDREW E. KRAUSE, U.S.M.J.[1]**

Plaintiff Joseph Schiavone commenced this action on April 22, 2025.  *See* ECF No. 1.

After Defendant Town of Orangetown (the "Town") filed a motion to dismiss the original

complaint on June 20, 2025, *see* ECF Nos. 10-11, Plaintiff filed an Amended Complaint on July

11, 2025, *see* ECF No. 14 ("Amended Complaint" or "Am. Compl.").  Currently before the

Court is the Town's motion to dismiss the Amended Complaint for failure to state a claim

pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  ECF No. 15.  For the reasons

that follow, Defendant's motion to dismiss is GRANTED IN PART and DENIED IN PART.

## BACKGROUND

The following facts, which the Court accepts as true for purposes of evaluating the

motion to dismiss, are taken from the Amended Complaint.

In or around 2019, Plaintiff began working for the Town in its Highway Department—he

started as a seasonal employee, and then transitioned to being a full-time laborer in or around

2020.  Am. Compl. ¶ 8.  During the course of his employment, Plaintiff was injured "a number

---

[1] The parties have consented to this Court's jurisdiction pursuant to 28 U.S.C. § 636(c).
ECF No. 23.

of times," including: (1) a back injury on or about April 5, 2022; (2) a subsequent back injury on or about November 18, 2022; (3) a shoulder injury on or about September 6, 2023; and (4) a third back injury on or about October 11, 2023.  *Id*. ¶ 9.  Plaintiff alleges that these injuries limited his ability to walk, stand, lift, bend, and work.  *See id*. ¶ 10.

According to Plaintiff, from his start date with the Town until he suffered his first injury, he never received any discipline, write-up, complaint, or negative performance evaluation.  *Id*. ¶ 14.  Plaintiff alleges, however, that immediately after his initial back injury on or about April 5, 2022, he was subjected to "a targeted discrimination and harassment campaign" by his supervisors, including Anthony Limandri, Brian DeBonis, and others.  *Id*. ¶¶ 12, 14.  Beginning after his injury, Plaintiff was given more difficult and less desirable work assignments (though he only provides one example of this, from a later time—*see id.* ¶ 32), and alleges that he was "the victim of increased scrutiny," including being required to submit to increased drug screening urinalysis.  *Id.* ¶ 13.  As set forth in the Amended Complaint, Mr. Limandri insisted that Plaintiff cut off the pockets of his cargo pants and accused Plaintiff of hiding fake urine in them to "beat drug tests."  *Id*. ¶ 15.  Plaintiff alleges he was singled out for this treatment because of his disability.  *Id*.

After sustaining the injury on or about November 18, 2022, Plaintiff was out on Worker's Compensation leave until August 1, 2023, at which point he returned to work.  *Id*. ¶ 16.  On August 2, 2023, Plaintiff was issued written discipline for allegedly violating the Highway Department's uniform policy, even though Plaintiff had "not changed his work attire [in] the five years he had been employed" by the Town, and even though there was no significant difference between Plaintiff's work attire and the work attire of his similarly situated coworkers, none of whom were disciplined.  *Id*. ¶¶ 17, 19-21.  Plaintiff was also accused of violating the Highway

2

Department's uniform policy on multiple other occasions, even though, according to Plaintiff, the Town does not even have a formal uniform policy. *Id*. ¶¶ 17, 18.

Plaintiff further alleges that on August 7, 2023, at approximately 6:30 a.m. while he was at work, he was notified that he had a doctor's appointment at 12:00 p.m. for his back injury. *Id*. ¶ 22. Immediately upon receiving this notification, Plaintiff spoke to one of his supervisors, Mr. DeBonis, who was in the same room at the time, to let him know that he would need to attend the appointment. *Id*. ¶¶ 22-23. The next day, Plaintiff was issued a disciplinary memorandum for failing to provide proper notice of his doctor's appointment. *Id*. ¶ 24. A similar series of events took place in each of the next two weeks. On August 14, 2023, at approximately 6:30 a.m., Plaintiff was notified that he had a doctor's appointment at 12:00 p.m. for his back injury, and he immediately advised Mr. DeBonis that he would need to attend. *Id*. ¶ 26. On August 21, 2023, at approximately 6:30 a.m., Plaintiff was notified that he had a doctor's appointment at 12:00 p.m. for his back injury, and he immediately advised his supervisor George Garrecht that he would need to attend. *Id*. ¶ 28. On August 22, 2023, Mr. Limandri issued a disciplinary memorandum to Plaintiff for failing to provide proper notice of his doctor's appointments on August 14, 2023 and August 22, 2023. *Id*. ¶ 29. Plaintiff alleges that other similarly situated employees engaged in similar conduct but were not disciplined. *Id*. ¶¶ 25, 30.

On August 15, 2023, Plaintiff contacted Personnel Administrator Roberto Urban to object to the harassment that he was experiencing, and the next day Plaintiff outlined specific harassing conduct that he had been experiencing since returning from leave. *Id*. ¶ 27. Plaintiff began to carry a copy of the Collective Bargaining Agreement ("CBA") between the Town and Plaintiff's union because he felt that he was experiencing harassment. *Id*. ¶ 31. On August 15, 2023, Mr. DeBonis ridiculed Plaintiff for carrying the CBA and told him to get rid of it. *Id.*

According to Plaintiff, in or around September of 2023, Mr. Limandri assigned Plaintiff the unfavorable task of cleaning up an overgrown guardrail in South Nyack. *Id*. ¶ 32.

When Plaintiff submitted a report regarding the October 2023 injury to Mr. Limandri, Mr. Limandri told Plaintiff that there is "something wrong with your brain and you need to get help." *Id*. ¶ 33. After this incident, Plaintiff discovered that his personnel file contained what he describes as "a falsified copy of his Employee Injury Report from his April 5, 2022 injury." *Id*. ¶ 34. Plaintiff alleges that this Employee Injury Report contained incorrect information about Plaintiff's injury and spelled his name incorrectly. *Id*.

Plaintiff submitted his concerns about harassment and fraud to the Town "through the Highway Department's email" and also sent a copy to the Town's Superintendent of Highways, James J. Dean. *Id*. ¶ 35. On October 25, 2023, Mr. Dean responded to Plaintiff and stated that an investigation had been conducted, that Plaintiff's allegations were unfounded, and that any other "false reports" would be met with discipline. *Id*. ¶ 36.

In or around December 2023, Plaintiff learned that Mr. Limandri had called the police "to request that the Highway Department office be swept for listening devices that he alleged Plaintiff had planted." *Id*. ¶ 37. None were found. *Id.* According to Plaintiff, Mr. Limandri went on to interrogate Plaintiff's coworkers to determine if any of them were "feeding him information." *Id*. Plaintiff alleges these actions were intended to alienate Plaintiff from his coworkers. *Id*.

During this time, Plaintiff received a performance evaluation that contained poor ratings from Mr. Limandri, despite the fact that Plaintiff had been on Worker's Compensation leave for a significant part of the year. *Id*. ¶ 38. Plaintiff alleges that when one of his other supervisors

4

gave him good ratings, Mr. Limandri asked the other supervisor why he would give Plaintiff good ratings.  *Id*.

**DISCUSSION**

**I.        Legal Standard for Evaluating a Motion to Dismiss Under Rule 12(b)(6)**

In deciding a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must accept all well-pleaded factual allegations in the complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Lynch v. City of New York*, 952 F.3d 67, 74-75 (2d Cir. 2020).  The court must also "construe all reasonable inferences that can be drawn from the complaint in the light most favorable to the plaintiff." *Arar v. Ashcroft*, 585 F.3d 559, 567 (2d Cir. 2009) (*en banc*).  That said, a court is not required to accept legal conclusions set forth in a complaint as true, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.  Rather, to survive a motion to dismiss, a complaint must set forth sufficient facts "to state a claim to relief that is plausible on its face." *Id*. (cleaned up).  A claim is facially plausible when the complaint contains enough facts to allow the court to reasonably infer that the defendant is liable for the alleged misconduct. *Id.*  Put another way, a plaintiff must set forth enough facts to "nudge [his or her] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.  "Although allegations that are conclusory are not entitled to be assumed true, when there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Lynch*, 952 F.3d at 75 (cleaned up).  "In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents

5

incorporated by reference in the complaint." *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010).

## II.    Analysis

The Amended Complaint asserts two causes of action under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* (the "ADA"):  (1) "harassment" in violation of the ADA; and (2) retaliation in violation of the ADA.  Am. Compl. ¶¶ 40-63.  The Court addresses each of these claims in turn.

### A.    First Cause of Action: "Harassment"—or Hostile Work Environment— Under the ADA

#### 1.    Clarification of the Nature of the Claim and the Arguments that Have Been Properly Raised

In its memorandum of law in support of the motion to dismiss, Defendant argues principally that Plaintiff has failed to state a claim of "discrimination" under the ADA.  *See* ECF No. 16 ("Def.'s Mem.") at 6-10.  But the Amended Complaint labels the first cause of action as one for "harassment"—not discrimination—and to remove any doubt about the distinction, Plaintiff states clearly in his memorandum of law in opposition to the motion that the two causes of action in the Amended Complaint "are harassment and retaliation, not discrimination," and points out that "the lion's share of Defendant's motion is arguing against a point that no one has made."  ECF No. 20 ("Pl.'s Mem.") at 6.  Accordingly, to the extent the Amended Complaint could potentially have been construed as alleging a claim of "discrimination" under the ADA, Plaintiff has expressly disavowed any such claim, and the Court need not address that further.

Plaintiff identifies his first cause of action as one for "harassment," and the Court construes this as a hostile work environment claim.  *See Brikman v. Westchester Med. Ctr. Advanced Physician Servs., P.C.*, No. 23-cv-10749 (PMH), 2025 WL 2371315, at *7 n.7

(S.D.N.Y. Aug. 13, 2025) ("Although Plaintiff identifies certain of his claims as 'harassment,' the Court construes them as hostile work environment claims."); *Vazquez v. Southside United Hous. Dev. Fund Corp.*, No. 06-cv-5997 (NGG) (LB), 2009 WL 2596490, at *13 (E.D.N.Y. Aug. 21, 2009) ("The court construes Plaintiff's allegations of 'harassment' and 'threat[s]' by [plaintiff's supervisor] as a hostile work environment claim."); *Felton v. Monroe Cmty. Coll.*, 528 F. Supp. 3d 122, 139 (W.D.N.Y. 2021) (construing claim for "harassment" as a hostile work environment claim); Am. Compl. ¶ 47 ("This harassment was so severe, pervasive, and objectively offensive that it altered the conditions of his employment and created an *abusive working environment*." (emphasis added)).

Defendant does devote one page of its opening memorandum of law to arguing that the Amended Complaint fails to state a claim alleging a hostile work environment under the ADA. *See* Def.'s Mem. at 11. The Town contends that (1) the conduct alleged in the Amended Complaint is not continuous, severe, or pervasive enough to constitute a hostile work environment; and (2) the incidents that Plaintiff alleges occurred were not related to Plaintiff's disability. *Id*. In its reply memorandum of law, Defendant argues for the first time that this claim should be dismissed because Plaintiff "failed to plausibly allege a disability." ECF No. 32 ("Reply Mem.") at 3-5. Defendant did not raise this argument in its initial memorandum of law; indeed, as part of "Point II" of the opening brief, Defendant structured its argument around the express assumption (for purposes of the motion) that Plaintiff *did* suffer from a disability within the meaning of the ADA. *See* Pl.'s Mem. at 6. Arguments raised for the first time in reply briefs need not be considered. *See, e.g., Knipe v. Skinner*, 999 F.2d 708, 711 (2d Cir. 1993) ("Arguments may not be made for the first time in a reply brief."); *In re Dobbs*, 227 F. App'x 63, 64 (2d Cir. June 29, 2007) (summary order) ("[I]t was entirely proper for the District Court to

decline to consider [an] argument[ ] raised for the first time in [a] reply brief."); *Frost v. Lentex Co., LLC*, No. 20-cv-5313 (VB), 2023 WL 373242, at *3 (S.D.N.Y. Jan. 24, 2023) ("Courts are not required to consider arguments newly raised in a reply brief, and generally, arguments are waived if they are first raised in a reply brief."); *Cruz v. Zucker*, 116 F. Supp. 3d 334, 349 n.10 (S.D.N.Y. 2015) ("Defendant raised several other arguments for the first time in his reply papers. Because these arguments were not raised in his opening brief, they were waived, and the Court does not address them."); *Cotona v. Fed. Bureau of Prisons*, No. 13-cv-609 (JMF), 2013 WL 5526238, at *2 (S.D.N.Y. Oct. 7, 2013) ("[A]rguments raised for the first time in a reply memorandum are waived and need not be considered.").  Accordingly, the Court will only address the two arguments made in Defendant's original memorandum of law in support of the motion to dismiss the hostile work environment claim.

### 2.    Legal Standard

To state a claim for a hostile work environment under the ADA, a plaintiff must allege "(1) that the harassment was sufficiently severe or pervasive to alter the conditions of his employment and create an abusive working environment, and (2) that a specific basis exists for imputing the objectionable conduct to the employer." *Fox v. Costco Wholesale Corp.*, 918 F.3d 65, 74 (2d Cir. 2019) (cleaned up).[2]  "To establish a hostile work environment, a plaintiff must show that the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Mitchell v. Planned Parenthood of Greater New York, Inc.*, 745 F. Supp. 3d 68, 101 (S.D.N.Y. 2024) (cleaned up).  "Although the victim must *subjectively*

---

[2] "Hostile work environment claims under the ADA are evaluated under the same standards as hostile work environment claims under Title VII." *Monterroso v. Sullivan & Cromwell, LLP*, 591 F. Supp. 2d 567, 584 (S.D.N.Y. 2008).

perceive the conduct as abusive, the misconduct shown also must be severe or pervasive enough to create an *objectively* hostile or abusive work environment." *Fox*, 918 F.3d at 74 (cleaned up) (emphases added).  In certain circumstances, "an isolated act may be so serious that it requires the conclusion that the terms and conditions of employment were altered." *Id.*  "Usually, however, the incidents complained of must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." *Mitchell*, 745 F. Supp. 3d at 101 (cleaned up).  "The focus is on the totality of the circumstances.  A totality-of-the-circumstances evaluation means that courts examine: frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with the victim's job performance." *Brikman*, 2025 WL 2371315, at *8 (cleaned up).  "Thus, a plaintiff need only plead facts sufficient to support the conclusion that he was faced with harassment of such quality or quantity that a reasonable employee would find the conditions of his employment altered for the worse." *Id.* (cleaned up).  "Hostile work environment claims are meant to protect individuals from abuse and trauma that is severe.  They are not intended to promote or enforce civility, gentility or even decency." *Isbell v. City of New York*, 316 F. Supp. 3d 571, 591 (S.D.N.Y. 2018) (cleaned up).

### 3.    Analysis

Even if Plaintiff subjectively perceived the conduct alleged in the Amended Complaint to be severe or pervasive, considering the totality of the circumstances, Plaintiff's allegations do not rise to the level of frequency or severity to plausibly allege an objectively hostile or abusive work environment.

Plaintiff alleges that he was subjected to a handful of incidents between April and November 2022 and, upon returning from Worker's Compensation leave, between August and

9

December 2023: an increase in drug screening; accusations of faking urinalysis tests; more difficult and less desirable work assignments (for which Plaintiff offered just one specific example); written discipline for violating the Town's uniform policy; written discipline for failing to give adequate notice of doctor's appointments; ridicule for carrying the CBA around and for something being "wrong with [his] brain"; being accused of planting listening devices at the office; having a supervisor ask his coworkers if they were "feeding him information"; and one negative performance evaluation.  Am. Compl. ¶¶ 12-15, 17, 21, 24, 29, 31-33, 37-38.

Plaintiff does not argue that any single incident was, in and of itself, sufficient to substantiate a hostile work environment claim, and even taken together, these allegations "could not support a finding of [a] hostile work environment that is so severe or pervasive as to have altered the conditions of [Plaintiff's] employment." *Littlejohn v. City of New York*, 795 F.3d 297, 321 (2d Cir. 2015) (allegations that employer made "negative statements" about plaintiff, was "impatient and used harsh tones with" plaintiff, "wrongfully reprimanded" plaintiff, "increased [plaintiff's] reporting schedule", and spoke to plaintiff sarcastically were not enough to adequately allege a hostile work environment claim); *see Fleming v. MaxMara USA, Inc.*, 371 F. App'x 115, 119 (2d Cir. 2010) (summary order) (describing as "quite minor," and not sufficient to sustain a hostile work environment claim, allegations that defendants "wrongly excluded [plaintiff] from meetings, excessively criticized her work, refused to answer work-related questions, arbitrarily imposed duties outside of her responsibilities, threw books, and sent rude emails to her").  None of the allegations in the Amended Complaint involve "physically threatening or humiliating conduct," and there is no indication that any of this alleged conduct—as irritating, unpleasant, and rude as it may have been—unreasonably interfered with Plaintiff's

10

ability to do his job.  Accordingly, Plaintiff has not alleged facts sufficient to state a claim for a hostile work environment in violation of the ADA.

Moreover, Plaintiff's hostile work environment claim is also subject to dismissal for the separate and independent reason that he offers nothing more than conclusory allegations for how the harassment he experienced was due to his disability.  *See Anderson v. City of New York*, 712 F. Supp. 3d 412, 430 (S.D.N.Y. 2024) (dismissing hostile work environment claim because plaintiff made only conclusory allegations of a causal connection between the alleged workplace misconduct and her protected characteristic).  "It is axiomatic . . . that the plaintiff must show that the hostile conduct occurred because of his disability." *Perez v. City of New York*, No. 16-cv-7050 (PGG), 2020 WL 1272530, at *14 (S.D.N.Y. Mar. 16, 2020) (cleaned up); *see also Lute v. Dominion Nuclear Conn., Inc.*, No. 12-cv-1412 (MPS), 2015 WL 1456769, at *14 (D. Conn. Mar. 30, 2015).

Plaintiff alleges that the accusation regarding efforts to evade drug testing requirements occurred because Plaintiff was "singled out because of his disability," Am. Compl. ¶ 15; states that he was treated differently than other "similarly situated employees outside of Plaintiff's protected classes,[3]" *id.* ¶ 25; *see also id.* ¶¶ 30, 39; claims that "the basis or motivating factor for these adverse acts was Plaintiff's disability," *id.* ¶ 48; and asserts that "[b]ut for Plaintiff's disability, Plaintiff would not have been subjected to discrimination in the terms, conditions, or privileges of his employment," *id.* ¶ 49.  But these conclusory allegations are not sufficient to give rise to a plausible inference that the conduct directed at Plaintiff was as a result of his disability.  There are no allegations, for example, about comments being made about Plaintiff's

---

[3] Notably, this boilerplate-sounding plural reference to "protected classes" does not even mention "disability"; there is nothing in the Amended Complaint to suggest that Plaintiff is a member of any other protected class.

11

physical limitations or capabilities, no allegations of remarks evidencing animus towards people with disabilities more generally, and no allegations that any action taken by Town employees made any reference to Plaintiff's disability at all. *See Panchishak v. Cnty. of Rockland*, No. 20-cv-10095 (KMK), 2021 WL 4429840, at *5 (S.D.N.Y. Sept. 27, 2021) (dismissing hostile work environment claim where none of the incidents alleged by plaintiff involved "reference to protected categories"); *Brown v. New York City Dep't of Educ.*, No. 20-cv-2424 (VEC) (OTW), 2021 WL 4943490, at *12 (S.D.N.Y. Aug. 31, 2021) (recommending dismissal of hostile work environment claim because plaintiff failed to allege that she was mistreated "*because of* her protected characteristics" (emphasis in original)), *adopted by* 2021 WL 4296379 (S.D.N.Y. Sept. 20, 2021); *Alfano v. Costello*, 294 F.3d 365, 377 (2d Cir. 2002) (noting that it is "important in hostile work environment cases to exclude from consideration [cases] that lack a linkage or correlation to the claimed ground of discrimination," because "[o]therwise, the federal courts will become a court of personnel appeals"). Plaintiff's allegations about being treated differently than similarly situated coworkers are also devoid of any detail or context that would allow for a reasonable inference that he was treated differently on account of his disability. *Dinkins v. Mayorkas*, No. 23-cv-10660 (RFT), 2024 WL 1806174, at *8 (S.D.N.Y. Apr. 25, 2024) (dismissing plaintiff's hostile work environment claim in part because plaintiff's allegations of being treated differently "from all the other workers" because of her disability were "entirely conclusory"). The incidents that Plaintiff alleges constitute a hostile work environment appear to "amount to, at most, workplace bullying completely detached from any discriminatory motive." *Vito v. Bausch & Lomb Inc.*, 403 F. App'x 593, 595-96 (2d Cir. 2010) (summary order). This is not sufficient to state a claim under the ADA for a hostile work environment.

\* \* \* \* \* \* \* \* \* \*

12

For all of these reasons, Defendant's motion to dismiss Plaintiff's first cause of action—for harassment in violation of the ADA—is GRANTED.

### B.    Second Cause of Action: Retaliation Under the ADA

#### 1.    The Argument that Has Been Properly Raised

The lone argument that the Town advances in its opening memorandum of law for dismissal of the second cause of action in the Amended Complaint—for retaliation under the ADA—is that Plaintiff sought only compensatory damages for this claim, and that compensatory damages are not available for claims pursuant to the anti-retaliation provisions of the ADA.  *See* Def.'s Mem. at 12-13.

Again for the retaliation claim, however, Defendant offers additional arguments for dismissal for the first time in its reply brief.  Specifically, Defendant maintains that Plaintiff fails to plausibly state a claim for retaliation because he did not engage in protected activity; fails to plausibly allege that he was subjected to an adverse action after making his August 2023 objections; and fails to plausibly allege any causal connection between any of the alleged adverse actions and his alleged protected activity.  *See* Reply at 8-11.  It is not clear why Defendant did not raise these arguments in his opening brief, but as detailed in Section A.1, *supra*, arguments

raised for the first time in reply briefs need not be considered, and the Court will not address any of these points here.[4]

## 2.    Analysis

District courts within the Second Circuit are divided as to the question of whether a plaintiff can seek compensatory damages for a violation of the anti-retaliation provisions of the ADA.  *Compare, e.g.*, *Felix v. N.Y.C. Dep't of Educ.*, No. 21-cv-6109 (LGS), 2023 WL 4706097, at *12 (allowing ADA retaliation claim seeking compensatory damages to proceed to trial), *with, e.g.*, *Infantolino v. Joint Indus. Bd. of Elec. Indus.*, 582 F. Supp. 2d 351, 362-63 (E.D.N.Y. 2008) (finding that compensatory and punitive damages are not available for retaliation claims pursuant to 42 U.S.C. § 12203) and *Jones v. Volunteers of Am. Greater N.Y.*, No. 20-cv-5581 (MKV), 2022 WL 768681, at *6 n.8 (S.D.N.Y. Mar. 14, 2022).  The Second Circuit itself has not directly addressed the question, though it has, in a substantial opinion, affirmed a jury's award of compensatory damages on an ADA retaliation claim.  *See Muller v. Costello*, 187 F.3d 298, 314-15 (2d Cir. 1999); *see also Edwards v. Brookhaven Sci. Assocs., LLC*, 390 F. Supp. 2d 225, 234 (E.D.N.Y. 2005) (acknowledging *Muller* decision, and denying defendant's request to strike plaintiff's claim for compensatory damages on ADA retaliatory discharge claim).

---

[4] To the extent the Town's would justify the Reply's inclusion of a comprehensive argument for dismissal of the retaliation claim merely as a response to the points raised in Plaintiff's opposition brief, that is not how dispositive motions are supposed to work.  Based on the limited scope of the Town's opening memorandum of law, Plaintiff was under no obligation to offer the arguments he included in Section III of his opposition brief at all.  The fact that he chose to make these points—presumably out of an abundance of caution—does not then open the door for the Town to raise for the first time a series of arguments that could have been made at the time the motion was originally filed.  Of course, the fact that the Court treats these arguments as waived for purposes of the motion to dismiss does not in any way limit the arguments that are available to the Town on a potential future motion for summary judgment.

Courts that have permitted ADA retaliation claims seeking compensatory damages to proceed have explained that "in the employment discrimination context, the remedies available for violations of the ADA are generally considered coextensive with the remedies available under Title VII, which permits employees to recover compensatory and punitive damages." *Felix*, 2023 WL 4706097, at *12; *see Edwards*, 390 F. Supp. 2d at 235-36. On balance, and in the absence of any explicit guidance from the Second Circuit, this Court finds this rationale persuasive, and declines to dismiss Plaintiff's retaliation claim on this basis.

Accordingly, Defendant's motion to dismiss Plaintiff's second cause of action—for retaliation in violation of the ADA—is DENIED.

## CONCLUSION

For the reasons set forth above, the Town's motion to dismiss (ECF No. 15) is GRANTED IN PART and DENIED IN PART. The Clerk of Court is respectfully directed to terminate the motion at ECF No. 15.

Plaintiff has not sought leave to file a second amended complaint, either in his opposition to the motion to dismiss or at any time while discovery has been progressing, and the Court will not address the possibility of leave to amend *sua sponte*. *See Altayyar v. Etsy, Inc.*, 731 F. App'x 35, 38 n.4 (2d Cir. 2018) (summary order) ("When a plaintiff does 'not advise the district court how the complaint's defects would be cured,' . . . it is not an abuse of discretion to implicitly deny leave to amend." (quoting *Porat v. Lincoln Towers Cmty. Assoc.*, 464 F.3d 274, 276 (2d Cir. 2006)). To the extent Plaintiff wishes to seek leave to file a second amended complaint, he must submit a letter to the Court regarding the proposed amendment by April 8, 2026. If Plaintiff does submit such a letter, Defendant must submit a response by April 15, 2026.

As indicated at ECF No. 37, the next status conference in this matter is scheduled for

April 28, 2026 at 10:00 a.m., via telephone.  By that time, all fact discovery should be complete.

Dated: March 25, 2026
        White Plains, New York

                                            **SO ORDERED**.

ANDREW E. KRAUSE
United States Magistrate Judge

16